IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**PHILIP GOODWIN**                                                                           **PLAINTIFF**

**V.**                                                           **NO: 1:19CV182-MPM-DAS**

**PREMIER FORD LINCOLN MERCURY,**
**INC., ET AL.**                                                           **DEFENDANTS**

### ORDER GRANTING MOTION TO REMAND

This cause comes before the court on the motion of plaintiff to remand this case to the Circuit Court of Lowndes County, Mississippi [6], Defendants' motions to dismiss [7] and [9], and Plaintiff's motion to strike [24]. The court, having considered the memoranda and submissions of the parties, is now prepared to rule.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2019, Philip Goodwin ("Plaintiff") initiated this products liability action in the Circuit Court of Lowndes County, Mississippi, against Premier Ford Lincoln Mercury, Inc. ("Premier Ford"), Ford Motor Company ("Ford"), Ford Motor Credit Company, LLC and Unknown Defendants (A-Z).

Plaintiff's state court complaint asserts that on May 28, 2015 he purchased a 2015 Ford Escape (VIN 1FMCU0GX3FUB68717) from Premier Ford, which was manufactured and distributed by Ford. Compl. at 3-4. Roughly six months after Premier Ford sold the vehicle to Plaintiff, it began having "significant mechanical problems." *Id.* at 4. According to Plaintiff, he returned to Premier Ford multiple times over the course of 2015 and 2016, to request diagnostics, servicing, and maintenance. On December 9, 2015, for example, Plaintiff presented to Premier Ford reporting that "the engine [began] suddenly running hot, stalling, and the check engine light turn[ed] on." *Id.* at 4. Service logs indicate a correction to the "body control module." Ex. B at 10.

1

Plaintiff returned to Premier Ford on February 3, 2016, complaining again that the Ford Escape "was repeatedly stalling while in operation and the check engine light would come on." *Id.* at 4-5. The February 3, 2016 visit resulted in a new engine being installed. *Id.* at 5; *see* Ex. B at 7-8. "A piston was leaking" and "the motor was replaced." Compl. at 5. A few months later, on May 31, 2016, Plaintiff presented to Premier Ford with transmission problems and complaints related to "lack of power on acceleration, the check engine [light] would come on, and the car could improperly shift in and out of overdrive while at highway speeds." *Id.* at 5; *see* Ex. B at 5. A "CJ5Z 9K378 B (FP) Kit" was installed and a "regulating valve" was replaced. Ex. B at 5. In August 2016, Plaintiff returned to Premier Ford, reporting that "the [vehicle] was repeatedly going dead when stopped at traffic signs or lights, was frequently hesitating while driving as if the engine were going to stall, . . . and there was a persistent roaring sound from the vehicle that seemed to increase as the wheel speed increased." Compl. at 6; *see* Ex. B at 3. The check engine light continued to turn on regularly. Compl. at 6.

On September 6, 2016, Plaintiff was involved in an accident while driving the Ford Escape. Compl. at 6. According to Plaintiff, when the vehicle "slowed down to enter [a] curve, [it] started to hesitate the same way it had frequently done before." *Id.* at 6-7. Then the "engine stalled and the check engine light turned on, causing the steering wheel to lock up and not turn." *Id.* at 7. Plaintiff was traveling 30-35 miles per hour at the time of the crash. *Id.* He left the roadway and collided with a tree approximately 10-15 feet away. *Id.* Although Plaintiff reports that he was wearing a seatbelt, it "did not lock up to restrain him" and "the airbags in the Ford Escape did not deploy." *Id.* Based on the facts alleged in the complaint, it does not appear that Plaintiff was seriously injured, though it appears he alleges an exacerbation of "preexisting hip problems." *Id.* at 12.

Plaintiff, suspecting that he was harmed by a mechanical defect in the Ford Escape, filed

2


suit against the Defendants in September 2019. The complaint alleges various causes of action against the Defendants, including negligence, strict liability, breach of warranty, misrepresentation, failure to warn, and negligent infliction of mental and emotion distress. Compl. at 14-20.

Defendants filed a notice of removal on October 16, 2019 in an effort to establish federal jurisdiction.[1] Both Ford and Ford Motor Credit Company are diverse defendants. Premier Ford, however, is a non-diverse Mississippi corporation with its principal place of business in Lowndes County, Mississippi. Defendants argue herein that Premier Ford was improperly joined to defeat diversity. Plaintiff filed a motion to remand on October 22, 2019, alleging that he has a viable claim against Premier Ford. Thus, Plaintiff maintains there is a lack of complete diversity for the purpose of this court's jurisdiction.

## STANDARD FOR REMAND

Federal courts have original jurisdiction over all civil cases when the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and the matter is between citizens of different states. 28 U.S.C. §1332(a). "[A]ny civil action brought in a State court of which the districts courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

After removal, a plaintiff may move to remand the action to state court, and "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c). The party seeking to remove the case to federal court "bears the burden of showing that federal jurisdiction exists and that removal [is] proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Moreover, "[a]ny

---

[1] Shortly after removal, Defendants filed two motions to dismiss. *See* [7], [9].

ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## DISCUSSION

The issue before this court on Plaintiff's motion to remand is whether Premier Ford was improperly joined in this suit. The Defendants argue that because Premier Ford is an "innocent seller," it is not subject to liability under the Mississippi Products Liability Act ("MPLA"). Plaintiff posits that Premier Ford is not an innocent seller because it negligently repaired and/or serviced the vehicle at issue herein. Mot. at. 2, 4. In addition, Plaintiff maintains that Premier Ford had actual knowledge of the vehicle's defects and failed to reasonably warn him of those inadequacies. *Id.* at 3-4.

"A claim of improper joinder by definition is directed toward the joinder of the in-state party." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (internal citations omitted). "The party seeking removal bears a heavy burden of proving the joinder of the in-state party was improper." *Id.* "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* at 573.

The Fifth Circuit recognizes two ways to establish improper joinder: "(1) actual fraud in the pleadings of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (internal citations omitted). Thus, "[t]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not . . . fraudulent in fact or in law." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). "This possibility, however, must be reasonable, not merely theoretical." *Id.* at 648.

Although a district court ordinarily conducts a Rule 12(b)(6) analysis when resolving improper joinder claims, the court has discretion to pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573; *see also Johnston v. Nationwide Mut. Ins. Co.*, 2015 WL 5334275, at *5 (N.D. Miss. Sept. 14, 2015). In conducting a summary review, the court must resolve all disputed questions of fact and ambiguities of law in favor of the party opposing removal. *Travis*, 326 F.3d at 649. The court does not accept as fact "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Access Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citations omitted).

As noted earlier, Defendants contend that Plaintiff has no possibility of recovery against Premier Ford because it is an innocent seller under the MPLA. Resp. at 2. Section 11-1-63(h) of the Mississippi Code provides:

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller or designer of a product other than the manufacturer shall not be liable unless the seller or designer exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller or designer altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller or designer had actual or constructive knowledge of the defective condition of the product at the time he supplied the product.

Miss. Code Ann. § 11-1-63(h). This section was intended to "immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." *Id.* Thus, to establish a reasonable basis for recovery, Plaintiff must demonstrate that his allegations against Premier Ford amount to one of the conditions stated in the statute.

Plaintiff alleges in his complaint that the "Ford Escape engine stalled and the check engine light turned on, causing the steering wheel to lock up and not turn," resulting in his motor vehicle accident and subsequent injuries. Compl. at 6-7. In his motion, Plaintiff maintains that Premier

5

Ford is not an innocent seller because it was "negligent in its servicing and repair[ing]" of Plaintiff's vehicle. Mot. at 4. He argues that the four episodes of servicing and/or repair discussed in the complaint raise an issue of fact as to whether or not Premier Ford "altered or modified the product" in a substantial way. *Id.* at 2-4. In addition, Plaintiff maintains that Premier Ford had "actual knowledge of [the Ford's] defects at the time it [was] sold" to Plaintiff and "fail[ed] to warn Plaintiff about [the] dangerous conditions of the vehicle." *Id.* at 4.

In response, Defendants maintain that the MPLA's innocent seller exemption immunizes Premier Ford from liability. Resp. at 2. Defendants acknowledge that Plaintiff brought the subject vehicle to Premier Ford multiple times over the course of 2015 and 2016 for repairs and/or maintenance. *Id.* However, Defendants maintain that "Plaintiff does not allege [in the complaint] that Premier Ford performed any negligent repairs, . . . and [that] Plaintiff never brought the subject vehicle to Premier Ford related to the alleged steering issue." *Id.* at 2. Defendants also state that "Premier Ford did not know about any allegedly defective condition, so it could not provide any warning" at the time of sale, and further urged that "there is no post-sale duty to warn in Mississippi." *Id.* at 3.

Although the parties have raised multiple arguments regarding the application of the innocent seller exemption, this court will limit its discussion to the servicing and/or repair argument, as it is sufficient to justify remand.[2]

Concerning the negligence claim against Premier Ford, Plaintiff alleges in the complaint that "Ford and/or one or more other Defendants were involved in each step of the design, manufacture, marketing, sale, inspection, servicing, and/or repair of the Ford Escape." Compl. at

---

[2] Although the court's findings herein are limited to the servicing and/or repair argument, it feels compelled to express that some of Plaintiff's remaining arguments appear to be thin at best. For example, Plaintiff argues at times that Premier Ford failed to warn him regarding various recalls after the sale of the vehicle, but there is no post-sale duty to warn or recall in Mississippi. *See, e.g.*, *Murray v. Gen. Motors, LLC*, 478 F. App'x 175, 182 (5th Cir. 2012).

6

3. In his motion, Plaintiff reiterates that "Premier Ford is the primary and/or sole Defendant who was involved in the 'sale, inspection, servicing and/or repair' aspects of this allegation." Mot. at 2. At all times, the complaint notes, Premier Ford had "a duty to exercise reasonable care in servicing, diagnosing, and testing." Compl. at 19. Later in his complaint, Plaintiff describes at least four instances in which he returned to Premier Ford post-sale to receive servicing and/or repairs relating to various mechanical issues. Compl. at 4-6. Plaintiff then offers a description of the damage incurred when the "Ford Escape engine stalled and the check engine light turned on, causing the steering wheel to lock up and not turn." *Id.* at 6-7. The service logs filed contemporaneously with the state court complaint indicate that Premier Ford made repairs to the engine mechanism, which Plaintiff alleges contributed to the accident. Ex. B at 7-8; *see also* Compl. at 4-6.[3] Over the course of servicing, it also appears that repairs were made to the body control module and transmission. Ex. B at 5, 10; *see also* Compl. at 5.

In this court's view, the facts presented by Plaintiff in his complaint appear sufficient to establish at least a reasonable possibility of recovery against Premier Ford. Defendants argue in their response that Plaintiff did not specifically allege in his complaint that Premier Ford "negligently worked" on the vehicle, and this court agrees that it does not appear that Plaintiff used this language. *See* Resp. at 4. Plaintiff's motion, however, makes clear that he is alleging negligent repair and/or servicing and this court, when construing the complaint liberally, views the facts discussed above and therein to potentially encompass such a claim.

To further support their argument that Premier Ford is an innocent seller, and thus improperly joined, Defendants provided the Declaration of William L. Russell, the President of Premier Ford. Mr. Russell stated in his declaration that Premier Ford did not exercise any control over any aspect of the design, testing, manufacture, packing, or labeling of the Ford Escape, have

---

[3] Additional instances of servicing and/or repairs are noted in Exhibit B.

actual or constructive knowledge of any alleged defect, or make an alteration to the vehicle prior to Plaintiff's purchase. Ex. A at 1-2 [7-1]. In his amended declaration, Mr. Russell further stated that Premier Ford performed no work on the Ford Escape that would affect the vehicle's steering mechanism. Am. Decl. at 2 [29].[4]

With their briefing and the filing of Mr. Russell's declaration, Defendants have emphasized that Plaintiff's complaint does not set forth detailed facts regarding the nature of the servicing and/or repairs made by Premier Ford. This is not unsurprising at this stage, as a customer who presents with a mechanical complaint, which is then repaired or serviced, is not generally in a position to know what efforts were initiated to repair the suspected problem.[5] It is certainly possible that discovery in this case will reveal that Premier Ford exercised due care in repairing or servicing the allegedly defective Ford Escape. However, at this juncture, this court is not presently concerned with the merits of Plaintiff's case, but whether it properly has jurisdiction over the matter.

Taken together, Plaintiff's allegations, along with the service logs and Mr. Russell's declaration, raise factual issues regarding Premier Ford's alleged role in modifying or altering the Ford Escape. Indeed, resolution of the question regarding interplay between the repairs made by Premier Ford and the effect those would have on the vehicle's engine, steering, or other mechanism would require the court to assess technical questions related to the mechanical repairs *and* address

---

[4] In late December 2019, Plaintiff filed a motion to strike Mr. Russell's declaration [24], arguing that the declaration did not comply with 28 U.S.C. § 1746, and otherwise consisted primarily of "conclusory, self-serving, and speculative statements." Mem. at 1. Following Plaintiff's motion, however, Defendants submitted an amended declaration which cured the technical omission identified by Plaintiff. To Plaintiff's second argument, the case law clearly allows the court to consider summary-type evidence when analyzing improper joinder. *See Smallwood*, 385 F.3d at 573-74. Plaintiff's request to strike the declaration, for purposes of the motion to remand, is thus not well taken and will be DENIED.

[5] Indeed, "holding a plaintiff to the allegations of his complaint in determining fraudulent joinder issues would ignore the simple reality that Mississippi law, like most states, provides for liberal amendments of complaints." *Johnston v. Nationwide Mut. Ins. Co.*, 2015 WL 5334275, at *5 (N.D. Miss. Sept. 14, 2015). Though Plaintiff has not indicated that he intends to file a motion to amend his complaint in state court, this court notes that it is reasonable to assume that Plaintiff could be allowed to amend, should he so request, to more specifically set forth his allegation against Premier Ford.

8

the credibility of Mr. Russell's statements. While the court does not rule out the possibility that Plaintiff will be unable to prove his claims against Premier Ford, it also cannot rule out that Plaintiff might be able to produce evidence in support of the allegations against them. It is thus too early to determine if Premier Ford can successfully rely on the innocent seller defense. Given the nature of the repairs, it is possible that Premier Ford exercised substantial control over and altered and/or modified the Ford Escape in a way that could have affected the engine, steering mechanism and/or control system.[6] And when assessing a claim of fraudulent joinder, the court must resolve any factual disputes at this stage in Plaintiff's favor. *See Travis*, 326 F.3d at 649.

Defendants otherwise urge the court to consider three cases from this jurisdiction which they deem to have "nearly identical facts," resulting in the dismissal of a dealership under the MPLA's innocent seller provision. *See* Resp. at 4. This court, however, finds these cases to be distinguishable. In *Taggert v. FCA US LLC*, the plaintiff brought a products liability case and joined the dealer. 2018 WL 493479, at *1 (N.D. Miss. Jan. 19, 2018). The dealer moved to dismiss and submitted an affidavit that it did not "alter or modify" the suspected defect, but the court granted the motion, noting that the plaintiff "ha[d] not provided *any* contrary evidence." *Id.* at *3 (emphasis added). Similarly, in *McClenton v. Cannon Chevrolet*, the court found that the "plaintiff's allegations [against the dealer] fail[ed] to assert *any* exercise of substantial control or any alteration to the vehicle." 2017 WL 4322432, at *3 (N.D. Miss. Sept. 28, 2017) (emphasis added). Finally, in *Murray v. General Motors, LLC*, the plaintiffs alleged that the dealer was negligent in "failing to identify and repair" a design defect, which is not the equivalent of altering or modifying a product. *See* 478 F. App'x 175, 182 (5th Cir. 2012). In the present matter, Plaintiff

---

[6] This court notes that the service logs filed with Plaintiff's state court complaint indicate that he returned to Premier Ford following his accident, at which time the dealer performed diagnostics relating to the steering system. *See* Ex. B at 1. Although it appears that the employee working on the vehicle did not identify any problem, this fact does not exclude the possibility that some repair performed *prior to* Plaintiff's accident contributed to the vehicle's mechanical issues or that the steering was affected by another part of the vehicle.

9

alleges that Premier Ford actually altered or modified the vehicle, rather than acted as a mere conduit of the product, and the court has found plausible support in the record for a claim of recovery on that basis under the *Smallwood* standard.[7]

This court is mindful that removal statutes are to be strictly construed against removal and all doubts resolved in favor of remand. This court thus concludes that Defendants have failed to demonstrate that no reasonable possibility of recovery exists against Premier Ford, and diversity of citizenship is accordingly lacking.

## CONCLUSION

In light of the above, Plaintiff's motion to remand [6] is **GRANTED**. The action is hereby remanded to the Circuit Court of Lowndes County, Mississippi. Plaintiff's motion to strike [24] is **DENIED** and Defendants' pending dispositive motions [7] and [9] are **rendered MOOT**.

**SO ORDERED**, this the 2nd of July, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[7] Defendants have also cited to cases from other jurisdictions, but this court similarly finds such authority to be unpersuasive given the facts of the present case. *See* Resp. at 4-5.